UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kaelin T. Hawkins,                            Case No. 3:20-cv-390

            Plaintiff,

     v.                                      MEMORANDUM OPINION
                                                        AND ORDER

Matrix NAC, *et al.*,

            Defendants.

## I. INTRODUCTION

Defendant Matrix NAC has moved for summary judgment on all claims asserted by Plaintiff Kaelin T. Hawkins. (Doc. No. 21). Hawkins filed a brief in opposition, (Doc. No. 22), and Matrix filed a brief in reply. (Doc. No. 23). For the reasons stated below, I grant Matrix's motion.

## II. BACKGROUND

Hawkins is an African American male who previously worked as an iron worker for Matrix at a Leipsic, Ohio construction site. Matrix had a random drug testing policy for workers on its job sites. (Doc. No. 21-1 at 9). On June 18, 2019, Timothy Mangis, a Matrix employee with "health and safety responsibilities," informed Hawkins he was required to take a drug test.[1] (Doc. No. 21 at 6).

---

[1] Mangis also was named as a defendant in this litigation. (*See* Doc. No. 1). Matrix represents Mangis was never properly served with the complaint and summons, (Doc. No. 21 at 1 n.1), and the docket does not reflect that service has been completed on Mangis. Hawkins has not shown good cause for his failure to serve Mangis and therefore, I dismiss Hawkins' claims against Mangis without prejudice. *See* Fed. R. Civ. P. 4(m).

Mangis took Hawkins, along with other randomly selected workers, to a trailer on the job site where a nurse collected urine samples from the employees. (*Id.* at 10-11).

There apparently had been problems with some workers attempting to subvert the drug testing process by bringing in bottles with "clean" or synthetic urine, and providing that urine as a sample for the drug test rather than their own. (*Id.* at 9). Hawkins asserts that, while they were walking to the trailer, Mangis said: "I'm tired of seeing piss bottles everywhere, so I'm going to watch you pee." (*Id.* at 9-10). According to Hawkins, Mangis directed his comments at Hawkins, saying he was going to change procedures and directly observe Hawkins during the drug test. (*Id.* at 10); (*see also* Doc. No. 1 at 3 ("Mangis [told Hawkins] . . . that he was going to look at his penis while he urinated.")). Hawkins alleges Mangis singled him out for these comments based upon Hawkins' race and ethnicity. (*See* Doc. No. 22 at 6).

Ultimately, neither Mangis nor the nurse observed Hawkins while he provided a urine sample for the drug test.[2] (Doc. No. 22-1 at 11). After he left the trailer, Hawkins reported the incident to Matrix in writing. (*Id.* at 11-12). Hawkins had a conversation about the incident and his complaint with a foreman named Dan Peerman, another foreman, and a third person from Human Resources. (*Id.* at 13-14). Matrix subsequently concluded Mangis engaged in "unacceptable and inappropriate language and behavior" that violated Matrix's Anti-Harassment Policy. (Doc. No. 21-2 at 4). Mangis was given a written warning and required to complete additional training. (*Id.* at 5).

---

[2] Matrix asserts "Mangis' statement may have had its intended effect of discouraging cheating as Hawkins admits that he 'personally' provided a urine sample for testing." (Doc. No. 21 at 6 (quoting Hawkins' deposition at pages 49:19-50:13)). It is unclear why Matrix seeks to rehabilitate Mangis' image while simultaneously touting its "thorough[] investigat[ion]" of Hawkins' subsequent complaints and the eventual discipline Matrix meted out to Mangis. (Doc. No. 21 at 6-7).

Of greater concern than the dissonance of Matrix's argument, the word "personally" never appears in the deposition excerpts Matrix filed. (*See* Doc. No. 21-1). Moreover, Matrix offers no evidence that Hawkins attempted to manipulate, or intended to manipulate, any drug tests during his employment, or that Hawkins ever was disciplined for testing positive pursuant to one of those drug tests. Matrix's allegation is, at best, unsupported.

A few weeks after the drug testing incident, but before Matrix returned its findings regarding Hawkins' complaint, Hawkins and Mangis had another run-in. On July 19, 2019, Hawkins was in the job trailer with approximately 25 other employees when Mangis approached him from behind. Hawkins alleges Mangis touched Hawkins on his back and then "stared at [Hawkins] strangely" as he walked through the trailer. (Doc. No. 22-2 at 4-5). Another employee witnessed some portion of the interaction between Mangis and Hawkins and provided a statement to Matrix. (Doc. No. 22-1 at 18-22).

After investigating the incident, Matrix "reminded [Mangis] of [the] policy regarding no retaliation and asked [Mangis] to not have any interaction with Hawkins." (Doc. No. 22-2 at 5). Matrix also asserts it informed Mangis that "another such incident, no matter how minor, would result in the termination of his employment." (Doc. No. 21-2 at 2-3).

Hawkins' employment on the Matrix worksite ended at some point after this second incident, as part of a mass layoff as the project neared its conclusion. (Doc. No. 21-1 at 7; Doc. No. 22 at 5). The termination of Hawkins' employment is not at issue in this case. (*See* Doc. No. 1).

Hawkins filed a complaint with the Equal Employment Opportunity Commission regarding Mangis' conduct and Matrix's response. After its investigation, the EEOC was unable to determine whether any federal discrimination statute had been violated and issued Hawkins a right to sue letter. (Doc. No. 1-2). Hawkins then initiated this litigation.

### III.    STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is

3

genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. ANALYSIS

Hawkins asserts claims for race discrimination and sexual harassment in violation of Ohio Revised Code § 4112.02. (Doc. No. 1 at 5-6). "[F]ederal case law applying Title VII is generally applicable to cases involving § 4112 of the Ohio Civil Rights Act." *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 163 (6th Cir. 2004) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 421 N.E.2d 128, 131-32 (Ohio 1981)).

Both Ohio and federal law prohibit an employer from discriminating against any person with respect to the terms and conditions of employment because of that person's race or sex. Ohio Rev. Code § 4112.02(A); 42 U.S.C. § 2000e-2(a).

Hawkins' race discrimination claim centers on the drug testing incident. He argues Mangis treated him differently on the basis of his race when Mangis insinuated Hawkins would attempt to cheat the drug test and when Mangis "walk[ed] him through several restricted [work] areas in a hurry to get him to the drug testing trailer." (Doc. No. 22 at 6). These facts do not establish an actionable race discrimination claim.

The complaint may be read to assert two types of race discrimination claims. The first is a disparate treatment claim, an assertion that Hawkins was treated differently because of his race. Hawkins does not point to any direct evidence of race discrimination, so I must evaluate his claim through the *McDonnell Douglas* framework. *See, e.g., Giles v. Norman Noble, Inc.*, 88 F. App'x 890, 893 (6th Cir. 2004). Thus, Hawkins must show "(1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a person

4

outside the protected class was treated more favorably than he was." *Id.* at 893-94 (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

Hawkins cannot satisfy his duty to establish a prima facie case because, at a minimum, he offers no evidence he suffered an adverse employment action. An adverse employment action is a "materially adverse" change in the terms or conditions of employment, such as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . [or] a less distinguished title, diminished options for advancement, or other unique indices . . . ." *Stewart v. Esper*, 815 F. App'x 8, 16-17 (6th Cir. 2020) (citations and internal quotation marks omitted).

In support of this element, Hawkins points only to Mangis' offensive behavior. (Doc. No. 22 at 6-7). He concedes he was not selected by Matrix for a random drug test because of his race, and he does not offer any evidence that any term of his employment – much less a material term – changed due to Mangis' conduct. While I have no reason to doubt Hawkins' statement that he felt humiliated by Mangis' behavior, no reasonable jury could conclude this incident constituted an adverse employment action. *See Stewart*, 814 F. App'x at 16-17.

As I noted above, Hawkins' complaint can be read to assert a second type of race discrimination claim, one for a racially hostile work environment. "To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) [ ]he was a member of a protected class; (2) [ ]he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with h[is] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

Even if I were to assume Hawkins could establish the first four elements of his prima facie

5

case, he fails to show Matrix is liable for Mangis' conduct. An employer may be held liable for harassment by a co-worker[3] based on "the employer's actions, or lack thereof, in response to the harassment: The plaintiff must show that the employer knew or should have known of the charged [racial] harassment and failed to implement prompt and appropriate corrective action." *Barrett*, 556 F.3d at 516 (alteration in original) (citation and internal quotation marks omitted).

Hawkins claims "Matrix made every effort to discredit the grievances, protect their employee Defendant [Mangis], disallow Plaintiff to have his phone out or record the communications, and insisting Plaintiff speak without his attorney present." (Doc. No. 22 at 8). The record does not support Hawkins' claims that Matrix attempted to discredit Hawkins' complaints about Mangis or tried to protect Mangis. Instead, the evidence establishes Matrix: investigated Hawkins' assertions; gave Mangis a written warning and required him to complete additional training after the drug testing incident; and gave Mangis a final warning after the July 19 incident in the job trailer. (Doc. No. 21-2 at 2-3, 5; Doc. No. 22-2 at 5).

By contrast, Hawkins offers no evidence that Matrix attempted to discredit his allegations. Moreover, he fails to identify any case which holds an employer may be held liable for a co-worker's harassment simply because the employer did not permit the plaintiff to record conversations or have an attorney present during an internal investigation.

I conclude there is no genuine dispute of material fact as to either of Hawkins' race discrimination claims and grant Matrix's motion for summary judgment on those claims.

Further, I also conclude Matrix is entitled to summary judgment on Hawkins' sexual harassment claim. As with his race-based hostile work environment claim, Hawkins must prove Matrix knew or should have known of the alleged sexual harassment and "failed to take immediate

---

[3] In his complaint, Hawkins alleges Mangis was his supervisor. (Doc. No. 1 at 3). But Hawkins has not offered any evidence to support that allegation and he did not attempt to rebut Matrix's assertion that Mangis was merely a co-worker. (*See* Doc. No. 21 at 13-14).

and appropriate corrective action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). An employer's response to co-worker harassment "is generally adequate . . . if it is reasonably calculated to end the harassment." *Id.* at 340. Even when viewing the evidence in the light most favorable to Hawkins, I conclude no reasonable jury could find Matrix's response to Hawkins' complaints "manifests indifference or unreasonableness in light of the facts [Matrix] knew." *Blankenship v. Parke Care Ctrs., Inc.* 123 F.3d 868, 873 (6th Cir. 1997) (abrogated on other grounds by *Faragher v. City of Boca Raton,* 524 U.S. 775, 780, 807 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 758-59 (1998)). Therefore, Hawkins cannot establish Matrix is liable for Mangis' behavior as a matter of law.

### V. CONCLUSION

For the reasons stated above, I grant Matrix's motion for summary judgment. (Doc. No. 21). Further, I dismiss Plaintiff's claims against Defendant Mangis without prejudice pursuant to Rule 4(m).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge